Argued November 20, affirmed December 10, 1973

## GLAZIER, *Appellant, v.* STATE ACCIDENT INSURANCE FUND (No. 73-537-L), *Respondent.*

516 P2d 757

*Robert H. Grant,* Medford, argued the cause for appellant. With him on the brief were Grant & Ferguson, Medford.

*Al J. Laue,* Assistant Attorney General, Salem, argued the cause for respondent. With him on the brief

were Lee Johnson, Attorney General, and W. Michael Gillette, Solicitor General, Salem.

Before SCHWAB, Chief Judge, and LANGTRY and FORT, Judges.

SCHWAB, C. J.

The principal issue in this workmen's compensation case as presented by the litigants is whether the claimant's conversion hysteria is permanent and, if so, the extent of. his disability. The secondary issue is whether claimant suffered a permanent partial disability to his right leg.

The claimant has a background of numerous injuries and complaints (some rather bizarre) during his working life. Some 18 years before, he had suffered from an hysterical paralysis following an injury, but had apparently recovered to the extent that he had no serious difficulties at the time of the accident in question.

The claimant, who is now approximately 50 years old, is an employe of the State Highway Department. On February 2, 1970, while cleaning out a culvert, he was struck on the right arm by a piece of flying metal. The blow knocked him down and as a result of this accident he suffered a puncture wound to the arm and a severe bruise to his right leg. His attending physician reported as of April 4, 1970:

"* * * * *

"For a period of several weeks he lost complete use of the right hand * * *. He was considered to have an ischemic peripheral neuritis and quite a considerable psychic overlay of a transient hysterical paresis. In addition he developed a painful

swelling of the right mid shin * * *. This cleared up * * *.

"The difficulty in his right upper extremity necessitated hospitalization from February 2 to the 10th of March. He was seen in consultation by Dr. John N. Reid * * * and by Dr. Mario Campagna. * * * he has had a slow but continued improvement * * *.

"* * * [H]e is to be seen again on April 9 to consider returning to work by mid April if he continues to improve."

Based on an examination of claimant made on May 26, 1970, Dr. Campagna, a neurosurgeon, reported:

"* * * * *

"He has continued to have pain in his right arm, right elbow, and the medial aspect of his right forearm. He has numbness through the entire hand and fingers.

"He returned to work April 16th for the Highway Department doing 'everything from pick and shovel to running equipment', and states that he has had considerable difficulty working, but that there is no such thing as light work on the Highway Department crew.

"* * * * *

"IMPRESSION: There is considerable functional overlay, but the electromyographic findings are definite and show a contusion of the right median nerve in the arm.

"RECOMMENDATION: The problem was discussed with the patient and he was reassured. * * * He should continue working."

On June 10, Dr. Campagna reported no treatment was recommended and claimant was urged to continue working. As of July 7, 1970, Dr. Campagna reported that the complaints seemed the same and recommended a neurolysis of the right median nerve

based on an impression that claimant was suffering from neuroma incontinuity with much functional overlay. On July 23, 1970, Dr. Campagna performed a neurolysis of the right median nerve. Claimant went back to his employment with the highway department in September of 1970, and has worked steadily since. Dr. Campagna saw him several times after the surgery, and finally a year later reported:

"* * * The residual symptoms of the right upper extremity are on the basis of conversion reaction.

"* * * No further neurologic therapy is indicated."

On September 27, 1971, claimant was examined by Dr. William Matthews, an orthopedic surgeon, who concluded:

"* * * Peculiar episode of injury followed by disability far exceeding any physical explanation for it. My examination would suggest that Dr. Campagna's impression of serious functional overlay is correct.

"* * * I suppose the patient will gradually improve, but it is quite possible that he will continue in this state of functional disorder."

On October 22, 1971, claimant was examined by a psychiatrist, Dr. James Kilgore. Dr. Kilgore's report includes:

"* * * * *

"At present the patient states that his left leg, which was injured, is now fine but that he has considerable swelling and discoloration of his right leg and ankle when he does not wear an elastic stocking. He also speaks of his right shoulder being stiff and there being no feeling in this. Another symptom is that his right arm and right forearm have no feeling in them. He states, since April of

1970, he has had 'no feeling on the whole right side of my body from the neck down to my toes'. 'It feels dead'. He also has had difficulty with his vision and had his glasses changed in April of 1970. Since the accident he has experienced chest pain across the anterior rib cage on both the right and the left and this pain varies from sharp intermittent pain to a nagging type of pain and is aggrevated [sic] if he becomes excited or gets short of breath. For the past 4 to 5 months he has noticed numbness around the mouth and chin and right cheek which feels like he has 'had novocaine injected into his jaw'. He also complains of right sided headaches and nausea when he becomes fatigued. It is also observed that the patient is wearing a brass band around his right wrist which he stated was to help the bursitis in his left shoulder.

"* * * * *

"It is my diagnostic impression that the patient has a psychoneurotic disorder conversion or [sic] hysterical type. He also has features of hypochondriasis.

"The above mentioned symptoms appear fairly mixed at this point, there is no psychological mindedness or insight into his problems. He is somewhat defensive and antagonistic concerning psychiatric evaluation. At this point, I do not feel that he is a candidate for any type of psychotherapeutic intervention and would consider his condition medically stationary, although I would gather that with time and some gradual improvement in his work situation there will also be a lessening of preoccupation with the above mentioned hysterical symptoms. I would suggest that he be encouraged to do as much as possible on the job, that he be reassured that he has a job in whatever capacity he is able to work and that the patient be considered medically stable."

On November 22, 1971, the Closing and Evaluation Division of the Workmen's Compensation Board made

a determination order giving claimant a permanent partial disability award of 96 degrees for partial loss of the right arm. This is equivalent to a determination that he had lost 50 per cent of the use of his arm. Claimant asked for a hearing.

The testimony given at the hearing which took place on March 22, 1972, disclosed that for all practical purposes claimant could make only minimal use of his right arm, that he walked with a limp and frequently complained of pain in his right leg, accompanied by intermittent swelling. All medical evidence was submitted in the form of written reports and documents, and consisted essentially of the material outlined above. The hearing officer withheld his opinion for the submission of additional medical reports which consisted of a supplemental report from the psychiatrist, Dr. Kilgore, and the report of Dr. Christian Hald, who is not identified as having any particular specialty, based on an examination he made of claimant on March 8, 1972.

The psychiatrist's supplemental report stated that in his opinion the February 1970 accident aggravated a previous psychological condition, and went on to say:

"* * * Therefore, I would see him as not a good candidate for any type of psychotherapy and I would also see the prognosis as being rather poor for a rapid improvement no matter what type of treatment is applied. Therefore, as I initially suggested, I feel that it would be important to have as early a settlement as possible, that the settlement not be set up in such a way as to 'pay Mr. Glazier to remain ill' and that he be encouraged to return to some type of employment that he is able to do even if it is of a menial type within the limitations of the conversion symptoms that he has. Since he apparently improved from a conversion symptom

before, there is no reason to suspect that there might again be some slow but steady progressive improvement if the above recommendations are followed through.[①] I hope that this opinion if helpful to you as well as to Mr. Glazier in the process of rehabilitating him."

Dr. Hald found no objective evidence of any physical disability. The report may be summarized as saying that claimant's difficulty with his arm was not physical, but was due to a "conversion hysterial episode" which was permanent and amounted to 100 per cent loss of function of the arm. He found, based solely on the history given by claimant, that he had 30 per cent loss of function of his leg which was permanent.

The hearing officer, in an order dated July 1972, affirmed the determination order, stating:

"There is no evidence that the pain claimant suffers in his right leg is disabling, therefore it is not compensable.",

and that

"* * * I am of the opinion that this aggravation or triggering [the accidental injury] did not result in any *permanent* * * * disability."

■ The Workmen's Compensation Board and the circuit court affirmed the order of the hearing officer. On de novo appeal to this court claimant contends that he is entitled to a permanent partial disability award equivalent to 100 per cent loss of use of his arm, and 30 per cent loss of use of his right leg. The medical records disclose that the bruise to the leg had cleared up very shortly after the accident, and that there were no complaints concerning his leg for an interval of almost two years. Regardless of whether the pain in

---

① The context clearly indicates an intent to cast this thought in the positive, although the language itself is to the contrary.

claimant's right leg is functional or physical, the evidence does not preponderate in favor of a finding that it is disabling.

Turning to a consideration of the condition of claimant's right arm, it is interesting to note that both the parties and the hearing officer appear to believe that the issue is whether or not claimant should receive any award for permanent partial disability due to his "conversion hysteria."

As we read the record the original award of 96 degrees, from which the State Accident Insurance Fund has not appealed, must have been based upon a conclusion that the conversion hysteria was permanent and amounted to a permanent disability equal to 50 per cent loss of use of an arm. There is nothing in the records which indicates other than that claimant has fully recovered physically from the injury to his right arm.

Claimant argues that the supplemental report of the psychiatrist should be disregarded, because it was based on the false assumption that the claimant had, as of March 27, 1972, not yet returned to work. The initial psychiatric report dated October 28, 1971, indicates that the psychiatrist was aware that the claimant had in fact returned to work, and we construe the supplemental report as saying in effect that claimant was going to improve, but only after his claim was settled.

■ It is at best difficult to say with any certainty what the future holds for claimant. He has the burden of proving his claim. We cannot say that the evidence preponderates in favor of a finding that claimant has suffered a permanent partial disability greater than the equivalent of 50 per cent loss of use of his arm.

Affirmed.